## Kelly *against* Graham.

A previous survey is indispensable to the granting of a patent for land by the commonwealth: a patent, therefore, which embraces land not included in the survey, confers no title upon the patentee, for such excess.

ERROR to the common pleas of *Armstrong* county.

John Kelly against William Graham. This was an action of ejectment for 240 acres of land, in which the defendant took defence for 60 acres. The plaintiff gave in evidence a patent for the land, dated the 8th of September, 1789, and which called for the Allegheny River as a boundary. The defendant claimed by virtue of an actual settlement made upon the land in 1809, and in order to maintain his possession, gave in evidence the warrant and survey of the plaintiff, upon which his patent was founded, and gave evidence to the jury to establish the fact, that such survey as actually made upon the ground, did not extend to the river; and that the sixty acres for which he took defence, and which lay between the survey and the river, although included in the plaintiff's patent, he was entitled to have by virtue of his settlement.

The court below, (Young, president,) instructed the jury, that if the land in dispute, was not included in the plaintiff's survey, the patent conferred no title upon him. Verdict for defendant.

*Buffington,* for plaintiff in error, cited 5 *Watts* 458; 2 *Ohio Rep.* 307; 4 *Hen. & Mun.* 130; 4 *Watts* 264; 7 *Watts* 91; 9 *Johns.* 102.

*M'Candless,* for defendant in error, cited 2 *Bin.* 109; 5 *Rawle* 348; 1 *Yeates* 28; 2 *Yeates* 311; 4 *Serg. & Rawle* 456; 5 *Serg. & Rawle* 215; 3 *Watts* 208.

The opinion of the court was delivered by

KENNEDY, J.—The first question which would seem to have claimed attention on the trial of the cause in the court below was one of fact, and therefore came within the province of the jury, to be decided by them under the advice of the court. Whether the Allegheny river was one of the boundaries of the survey under which the plaintiff claimed was the question. The whole cause may be said to have turned upon the division of it. Exception was taken by the plaintiff's counsel to the instruction which the court gave the jury in relation to it. The counsel for the plaintiff, from the points submitted to the court, would seem to have thought

[Kelly v. Graham.]

that it was to be determined according to the calls in the patent, which expressly makes the river a boundary for a distance of 300 perches, though it might be in contradiction to the survey as made on the ground, and the return thereof as filed in the surveyor-general's office. It is clear, however, that the extent of the plaintiff's claim under the patent, if the boundaries called for in it be different from the survey, as made upon the ground and returned by the deputy surveyor into the office, must be regulated and decided by the latter. The officers of the land office are not the proprietors of the lands granted by them, that they can grant them without regard to quantity or price. The lands belong to the state; and the land officers act only as the agents of the state in disposing of them; and are limited in their action by the authority granted to them in this behalf. So that if they grant lands belonging to the state, in a manner not authorised by law, the grant must be considered void. They can not give a patent for a tract or lot of land, without first having the quantity contained in it ascertained by a survey or admeasurement thereof, in order that the price required by law, to be paid for it to the state by the patentee, may become fixed and known, and either actually paid or secured to be paid in the manner prescribed by law. It is indisputable, therefore, that a survey should be made for the purpose of ascertaining the quantity before a patent shall be issued; and being made to that end, it follows as a necessary corollary, that in making out the patent, the courses, distances, and calls of the survey ought to be strictly observed, and made the boundaries of the grant contained in the patent. And wherever it happens, from mistake or otherwise, that this is not the case, the patent must be corrected and reformed by the survey, and made to correspond with it as to quantity and boundary. Hence, if, in the present case, the patent, under which the plaintiff claims, includes land not embraced within the survey, it must be considered void for the excess. The patent expressly calls for the river as a boundary to the extent of 300 perches; and had the survey, as returned into the surveyor-general's office, also called for it as such to the same extent; and the river been laid down accordingly in the draft, returned into the office as one of the boundaries of the survey, it might, and doubtless would, have been regarded as such; though the surveyor, in making it on the ground, might have run various courses, consisting of straight lines and angles, conforming somewhat to the meanders in the course of the river, and making marks agreeably thereto on the bank thereof. This would, in such case, have been considered as an exception to the general rule, which makes the marks of the surveyor on the ground, the limits of the survey, where they vary from the courses and distances reported by him in his return thereof. The river, in such case, being a much more conspicuous and durable mark of boundary, than any that the surveyor could make, and being expressly declared by him, in his

return, to be a boundary, would be taken as the true and controlling boundary: and the courses run, and marks made by him on or near to the bank of the river, as being done only for the purpose of calculating the contents of the survey, because he has no means of making such calculation, otherwise than by straight lines, according to their respective courses and distances as ascertained in that way. He can do nothing with a serpentine course, such as that of a stream, except it be to note the various meanders, as nearly as practicable upon straight courses, and measuring their several distances. And having done this, he makes his calculation thereupon first; and then generally makes a computation, founded often perhaps upon conjecture as much as any thing else, of the quantity contained between the lines run on the bank of the stream and the stream itself, and by adding this to the amount contained within the courses and lines actually run and measured, the whole quantity, making the stream a boundary, is ascertained. But the survey, as returned here by the deputy surveyor, as also all the other evidence on the subject, shows most unequivocally; that the river is not made a boundary of it, and indeed, that it could not have been so intended. The draft of the survey returned, is made out according to the courses and distances actually run and marked upon the ground, and not made to call for the river on any side or point whatever. At some distance from the survey, however, the Allegheny river is laid down upon a straight line, without any regard to its meanders, as if it were intended by the artist merely to show that the land, included within the survey, lay near to the river. That this was all that was intended, seems to be still further indicated by the lines of the survey, not conforming even to the general course or bearing of the river, as laid down upon the draft of the survey. The survey at one end is about fourteen perches from the river, and at the other twenty-three: thus excluding sixty acres of land lying between it and the river, which is claimed by the defendant in virtue of a settlement made thereon by him in the year 1809, and kept up and maintained by him from that time down to the present. The call for the river as a boundary in the patent must therefore be deemed to be a mistake of the clerk in the land office, who wrote it. But whether inserted by mistake or design, it can not avail the patentee any thing, or give him any right whatever to the land not actually included within the survey. If he, at the time of obtaining the patent, entertained a desire to have the sixty acres included in it, he ought to have applied to the board of property for an order of resurvey, which as the land was then unappropriated, most probably would have been granted, and in making the resurvey to have had it included; and upon the quantity being thus ascertained to have paid the state for it, which would have entitled him to a patent embracing it as well as the rest. We are, therefore, satisfied that the court below committed no error which could possibly prejudice the right of the plaintiff.

Judgment affirmed.