## Wharton *versus* Garvin.

Generally, a survey is to be carried to its calls, unless there be actual lines on the ground, excluding them; in that case, the lines on the ground will control the calls, for they constitute the survey.

When there are no natural monuments or lines called for, by which the closing line is to be fixed and ascertained, and no line on the ground, it follows, of necessity, that the survey is to be closed by a direct line between the *termini* of the lines on the ground, or as fixed by the courses and distances returned to ascertain these *termini*.

A call, to stand as a boundary, must be indicated to be such, with sufficient certainty to show that it was so intended; and, therefore, the designation of a river in the survey returned, which is neither called for as a boundary, nor are the lines protracted to it, will not overrule a straight line, returned as a boundary, at some distance from the river.

Kelly *v.* Graham, 9 *Watts* 116, affirmed.

ERROR to the Common Pleas of *Westmoreland county*.

This was an ejectment by William Wharton against Martin Garvin, for a narrow strip of land lying along the Allegheny river, in Allegheny township, containing ten acres, more or less.

The plaintiff claimed title under a warrant to William Wharton, his ancestor, for 300 acres of land, dated the 1st July 1776; on which a survey of 317 acres 46 perches was made, on the 11th November 1776; and a patent was issued, dated the 18th June 1841.

The question was, whether or not the lines of this survey ran to the Allegheny river. The north and south lines were found upon the ground, but did not reach to the river on the north by 40 perches, and on the south by 19 perches. The survey as returned did not exhibit a protraction to the river, and the closing or west line, as represented by the draft, was a straight line, 238 perches long, leaving a vacant strip, which was the land in controversy, apparently excluded from the survey. The return did not call for the river as a boundary, but it was represented upon the draft, as at some distance west of the closing line, with the words written under it, within the representation, "up Allegheny river."

The patent described the southern boundary as running north 55 degrees west, 68 perches, to a post near the Allegheny river; thence, north 35 degrees east, 238 perches, up along near said river to a post, &c.

The court below (BUFFINGTON, P. J.), in answer to a point presented by the defendant, being of opinion, upon an inspection of the draft, that the lines of the Wharton survey did not extend to the Allegheny river, instructed the jury, that the plaintiff was not entitled to a verdict.

To this charge the plaintiff excepted; and a verdict and judg-

[Wharton v. Garvin.]

ment having been rendered for the defendant, the plaintiff sued out this writ, and here assigned the same for error.

*Cowan*, for the plaintiff in error.—The location of a warrant is always a question of fact; it cannot be one of law; and, therefore, the court below erred in taking the decision of it from the jury. The courses and distances run on the ground are the true survey; the return is only evidence of it, but not conclusive: Lilly *v*. Kitzmiller, 1 *Yeates* 28; Mills *v*. Buchanan, 2 *Harris* 59.

*Foster*, for the defendant in error.—To authorize the court to submit a question of fact to the jury, there must be some evidence of it. The court, in this case, did not say that the location of a warrant was a matter for the court, not the jury; but only that there was no evidence, that would warrant the jury in finding, that the land in dispute was embraced in the plaintiff's survey. He cited 5 *Binn*. 77; 4 *W. & S*. 55; Kelly *v*. Graham, 9 *Watts* 116.

The opinion of the court was delivered by

THOMPSON, J.—We have a very unsatisfactory report of the evidence in this case, and no draft of adjoining surveys, or of the supposed interfering survey. A full and accurate presentation in these particulars, would have been valuable aids in this examination. As we have them, however, only in deficient form, we must dispose of the question raised by the best lights in our possession.

The learned judge of the Common Pleas charged the jury, as a matter of law, that from the face of the warrant, survey, and patent, the lines of the Wharton survey did not go to the Allegheny river, and that the plaintiff was not entitled to recover the land in dispute. The only assignment of error is to this instruction.

The north and south lines of the Wharton survey were found on the ground, but did not reach to the river, on the north, by 40 perches, and on the south, by 19. The closing or west line we must treat, in view of the charge of the court, as not having been actually run on the ground, although it would seem, that there was some evidence given by the defendant on this point. The survey, as returned, did not exhibit a protraction to the river, and the closing or west line, as represented by the draft, was a straight line 238 perches long; leaving a vacant strip, the land in controversy, apparently excluded from the survey. The return of survey does not call for the river as a boundary. It is true, the river is plotted on the survey, but it is represented as at some distance west of the closing line, with the words written within the representation, "up Allegheny river." The patent dated

June 18th 1841, describes the south boundary as "running north 55 degrees west, 68 perches, to a post near the Allegheny river; thence, north 35 degrees east, 238 perches, up along near said river to a post," &c. This is the west and disputed line. The warrant is not before us. It was probably indescriptive, and would not aid in the question of location.

Generally, a survey is to be carried to its calls, unless there are actual lines on the ground excluding them. In that case, the lines on the ground will control the calls, for they constitute the survey. But when there are no natural monuments or lines called for, by which the closing line is to be fixed and ascertained, and no line on the ground, it follows, of necessity, that the survey is to be closed by a direct line between the *termini* of the lines on the ground, or as fixed by the courses and distances returned, to ascertain these *termini*. It was ascertained, in this case, that the north and south boundaries, by their courses and distances, did not reach the river by the number of rods already stated. And if we are to discard the river as a call, then the west boundary must necessarily be closed by a straight line from point to point of the side lines. There is no other process by which it may be done.

A call, to stand as a boundary, must be indicated to be such with sufficient certainty to show that it was so intended. As it becomes a part of the survey, it should be declared. This is not only obviously necessary, as defining the warrantee's rights, but as a guide to others in locating junior warrants, so that they may not be involved in conflicts with appropriated lands. The representation of an object at a distance from a closing line, without any words indicative of an intent to make it a boundary, would hardly be sufficient to constitute it such. It is no better, where words written on the face of the representation express no definite intent. Such seems to me to be exactly the case here. The course of the flow of the Allegheny river is indicated by words written on it, but there is nothing to show that it was intended as a boundary. A line, at a distance from it, with its courses and distances, is plotted on the return of survey as the west line. Of itself, this would have little weight, if the river had been made a call. As it was not so done, in terms, and appears to be excluded by the draft, it is a circumstance of controlling influence. Such was held to be the case in Kelly *v.* Graham, 9 *Watts* 116. I would lay no great stress on the circumstance of the plotted line being straight along a stream, ordinarily, but in the absence of anything showing that the natural monument near by was called for as a boundary, it must be considered indicative of a persistent intent to exclude it as such.

We are predisposed to presume the existence of an intent to bound surveys on navigable waters by the stream, not only on account

[Wharton v. Garvin.]

of a supposed advantage arising from such a location, but because it is in accordance with practice. By an early regulation of the proprietories, and afterwards by the Act of 8th April 1785, § 15, surveyors were directed, in locating warrants on large streams, to lay the breadth on such streams at one-third of the length back; but this act was only directory, and a survey by different dimensions, when returned and accepted at the land office, was never supposed to be void. The warrantee was not bound to have his land located by the stream. He might direct the lines to be located differently, or he might acquiesce in a different location without direction, or he might be bound by rules of law determining the location of his land, so as to exclude him from a stream. Either of these facts existing, would overthrow the presumption, and limit the warrantee, by designations exclusive of the stream. It may be, that the hill-side here, was excluded at the time the survey was made, because of its barren character. And it may be, too, that the line on the ground was not extended to the river, owing to the difficulty and labour of descending or ascending the hill. If this last had been the true reason, however, the surveyor could readily have obviated all difficulty, by plotting his lines to the river, and calling for it as a boundary. But this he did not do. The officers of the land office entertained this view of the survey, when they granted the patent. This is evident from the description contained in it, already referred to. So, too, must the grantee have considered it, for he accepted the patent, with a description which excluded the river as a boundary. The patent does not *per se* control a survey, but may be considered, in a case like the present,.as evincive of the views of the grantee as to the boundaries of his land. Here, it clearly indicates that the line did not go to the river, but only near to it.

There was no controversy in the case, but that in regard to the west boundary. Treating it as the evidence fairly presented it, as a case in which no line had ever been run, and there being no call for the river as a boundary, the court very properly directed the jury, that, closing the survey as the law would under such circumstances require it to be closed, the land in controversy was not embraced in the Wharton survey, and that the plaintiff was not entitled to recover.

The case of Kelly v. Graham, 9 *Watts* 116, is singularly like the present. It was a survey on the same stream; a representation of the river, as in the present survey; and, as here, it was not called for as such; it was simply a sketch of the river opposite the tract. In that case, the strip between the river and the survey, as returned, was narrower than this one. For want of a return of survey, showing that it was carried to the river, or a call for it, the settler on the strip held the land.

We see no error in the charge, and the judgment is affirmed.