Cole, Appellant, *v.* P. & L. E. R. R. Co.

Argued April 20, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Alvah M. Shumaker* and with him *William McElwee, Jr.,* for appellant.—Where maps, plots or field notes are referred to in descriptions of land, they are to be regarded as incorporated into the description and they stand on the same footing as monuments. Harper v. Coleman, 94 Pa. Superior Ct. 62; Ferguson's Appeal, 117 Pa. 426; Robinson v. Myers, 67 Pa. 6.

The terms "bank of river" and "low-water mark" are not synonymous. Wood v. Appal, 63 Pa. 210; Kelly v. Graham, 9 Watts 116; Wharton v. Garvin, 34 Pa. 340.

*J. Norman Martin* and with him *Norman A. Martin* of *Martin & Martin* for appellee. The deed carried

438

title to the property to the river. Payne v. Howard, 107 Pa. 579; Mottley v. Sargeant, 119 Mass. 231.

OPINION BY PARKER, J.: October 10, 1932:

The plaintiff brought an action of ejectment for land in Lawrence County located on the Mahoning River. This stream was originally known by the name Big Beaver Run, later by the name Mahoning Creek, and now is called Mahoning River. At the time of the grant of the land in question by the Commonwealth, the stream was not a navigable river in fact, but later was declared navigable by act of assembly. See Coovert v. O'Conner, 8 Watts 470, 477. Plaintiff and defendant claim from a common source of title, such source being the grantor in the deed to defendant. The solution of the present controversy depends upon the construction of that deed, the description in which was as follows: ''Beginning at the northeast corner, on line of land of first parties at a post north seventy-two degrees and fifteen minutes west, fifty-nine feet from the corner of the mill; thence, south sixteen and one-half degrees west, seventy-four and three-tenths feet to a stone corner on the bank of the Mahoning River, said corner being north seventy-two and one-fourth degrees west, forty-four and three-tenths feet from the office of the mill; thence, north sixty-four and one-half degrees west along the bank of the river, four hundred and fifty-five and four-tenths feet to a stake; thence, etc., containing forty-five one-hundredths of an acre ......excepting and reserving however to the parties of the first part, their heirs and assigns as appurtenant to the said mill property the right of way and road from the public road near the north end of the bridge, along the Mahoning River to the said mill (McClelland & Robinson) as appears by the plot thereto attached and hereby made part of this deed.''

The surveyor's courses and distances describe a quadrilateral extending about four hundred fifty feet

east and west, fifty-five and four-tenths feet wide on the east line and fourteen feet on the west line. The land in dispute lies between the south line of the quadrilateral as plotted and low-water mark on the Mahoning River and between the east and west lines of that quadrilateral produced, defendant claiming the right to extend its grant to low-water mark.

There was attached to the deed a plot, which by the terms of that deed was made part thereof. This plot shows the quadrilateral in question marked with heavy red lines, the other lines being in black. The outline of the flour mill of the grantors in the deed was indicated as was the ordinary low-water mark. At seven different places on the map the exact distance between the surveyor's red line and low-water mark is given. Near the western part of the land there is indicated a public road leading to a bridge crossing the Mahoning River. From this public road to the mill there is outlined the limits of a private road as reserved in the deed. Shaded lines are drawn beginning at the mill and extending beyond the western end of the property which presumably indicated the bank as it existed at the time the deed was made. These shaded lines follow closely the surveyor's red line except where the bank turns toward the river and away from the red line to meet the abutments and approach of the bridge to which we have referred. The eastern and western lines indicated in red and forming part of the quadrilateral are not projected to the river, while the land of one J. B. Coates immediately west of the land in question is indicated by a broken line in black as extending to the river.

The contention of the appellee, sustained by the lower court, is based upon the position that the words "along the bank of the river" are equivalent to "along the river" and that it is well settled in Pennsylvania that where a grant or survey is bounded on a river or creek it extends to that river or creek.

The grantor in the deed to the defendant at the time of the grant was the owner of the land to the east on which was located a mill and owned the bed of the Mahoning River opposite the land in question two-thirds of the way across the river. Although the stream had been made navigable by act of assembly, the grantors referred to were the owners of the part of the bed of the stream adjoining. "It is to be observed, that the Mahoning Creek here referred to, was not, at the time of these grants, declared a public highway, though it has been since declared so by an act of the legislature. Being then considered as a stream not navigable, it is a settled principle that a grant, from the state, of vacant land, bounded by such a stream and following its courses, passes the right to the centre of the stream": Coovert v. O'Conner, 8 Watts 470, 477.

"If there is any point settled in Pennsylvania relating to land titles, it is that where a grant or survey is bounded on a river or creek, it extends to that river or creek, and except in the case of large navigable streams, extends to the middle of the creek; and whatever may have been or may be imagined in this vicinity, I think that where a man's grant or his survey calls for a creek or river, no lawyer of any reputation would contend that another could come between him and the creek or river, and cut him off from it; and where the courses and distances on the creek or river are given, and on examination it is found, they do not closely follow the stream, it does not alter the case. A surveyor cannot run a curve line with his compass; and courses and distances may have been taken incorrectly, or an error may have been made in making out the return of the survey; but if a creek is returned as the line, there can be no mistake as to it; it is the line; and courses and distances along it are disregarded": Ball v. Slack, 2 Wharton 508, 538. This rule applies

alike to public and private surveys and a private deed is judged by the same rule as a patent or warrant: Wood v. Appal, 63 Pa. 210, 224. "In navigable streams the title runs to ordinary low-water line, and in unnavigable to the middle of the stream. But if the stream is not made the boundary, or if a line is actually run and marked for the survey apart from the stream, the rule changes to suit the facts of the case": Wood v. Appal, supra.

"This presumption [that the grantor intends that the boundary should extend to the stream] is rebuttable, and it is rebutted by any words which clearly indicate an intention to restrict the grant to the shore or to some point other than the thread of the stream. The question of construction primarily involves an inquiry as to the real intention of the parties under all the circumstances": 4 R. C. L. 86. Also see Kelly v. Graham, 9 Watts 116, 118. "A call, to stand as a boundary, must be indicated to be such with sufficient certainty to show that it was so intended": Wharton v. Garvin, 34 Pa. 340, 342. "But if the stream is not made the boundary, or if a line is actually run and marked for the survey apart from the stream, the rule changes to suit the facts of the case": Wood v. Appal, 63 Pa. 210, 224. "Whatever may be the rights of the riparian owner they are subject to his disposition as are other parts of his land, he may reserve them out of a grant, convey them and retain the land, or by grant or devise sever one from the other": Gibbs v. Sweet, 20 Pa. Superior Ct. 275, 282.

No competent extrinsic evidence having been given bearing on the location of the line in dispute we have for consideration only the interpretation of deeds in the line of title common to both parties. This, therefore, presents a question of law for the court: McCullough v. Wainwright, 14 Pa. 171, 174; Palmer v. Farrell, 129 Pa. 162.

The plot to which we have referred was made part of the deed by express words and was attached to and recorded with it. " 'Where maps, plots or field notes are referred to in descriptions of land, they are to be regarded as incorporated into the description and they stand on the same footing as monuments': 9 C. J. 220. A map or plan so referred to becomes a material and essential part of the conveyance and is to have the same effect as though copied into the deed": Harper v. Coleman, 94 Pa. Superior Ct. 62, 67.

The appellant contends, and in our opinion rightly so, that the deed and plot show a clear intent on the part of the grantor to limit the grant to the line described as running along the east bank of the river.

(1) As applied to inland rivers and creeks the word "bank" has a well-known meaning. See McCullough v. Wainwright, supra. We quote in part from Howard v. Ingersoll, 54 U. S. (13 How.) 381, 415, 14 L. Ed. 189. "When the commissioners used the words bank and river, they did so in the popular sense of both. When banks of rivers were spoken of, those boundaries were meant which contain their waters at their highest flow, and in that condition they make what is called the bed of the river. They knew that rivers have banks, shores, water, and a bed, and that the outer line on the bed of a river, on either side of it, may be distinguished upon every stage of its water, high or low; at its highest or lowest current ...... Such a line may be found upon every river, from its source to its mouth. It requires no scientific exploration to find or mark it out. The eye traces it in going either up or down a river, in any stage of water. With such an understanding of what a river is, as a whole, from its parts, there is no difficulty in fixing the boundary line in question ....... Such a line, too, satisfies the calls on and along the bank in the navigable and unnavigable parts of the river ...... Such a line may be made certain on every

part of the river, whatever may be the changes on the western bank from washings, the abrasions of extraordinary floods, or from any of those sudden causes which in nature change the beds of rivers ...... Water is not a call in the description of the boundary, though the river is, and that, as we have shown, does not mean water alone, but banks, shores, water, and the bed of the river. If water, as one of the river's parts, had been meant, it would have been so expressed ...... Both bank and bed are to be ascertained by inspection, and the line is where the action of the water has permanently marked itself upon the soil."

In litigation involving the boundary lines between the states of Georgia and Alabama, Ohio and West Virginia, and Texas and Oklahoma, the words "along the banks" have been held to be not synonymous with "low-water mark." See State of Oklahoma v. State of Texas, 260 U. S. 606, 43 Supreme Ct. Rep. 221, also an interesting discussion of this same subject by Mr. Justice STOREY, by which he arrived at the same conclusion in Thomas v. Hatch, 3 Sumn. 170 Fed. Cas. No. 13899; Hatch v. Dwight, 17 Mass. 289, 9 Am. Dec. 145; Stone v. Augusta, 46 Me. 127.

In the case of Cryer v. Sawkill Camp, 88 Pa. Superior Ct. 71, 79, Judge KELLER in his opinion points out the recognized distinction between grants where the course is described as running "along the pond," or "along the stream," and those where the line runs "along the bank," or "along the shore," of the pond or stream. Also see Smoulter v. Boyd, 209 Pa. 146; Fuller v. Cole, 33 Pa. Superior Ct. 563.

(2) As we have pointed out the plot pictures the quadrilateral in heavy red lines, while low-water mark and the bank as well as other objects are shown in black. The south red line follows the bank and not low-water mark. The east and west red lines are not produced to the river. The land of J. B. Coates to the

west is shown on the plot as an adjoiner and the dividing line as indicating Coates' land is shown by a broken black line continuing to low-water mark. This taken with names of owners shown on the plot discloses an evident intent to describe the land around the mill and extending up the creek as the property of McClelland and Robinson, the grantors. These matters are recognized in our cases as having a controlling effect. Chief Justice AGNEW in Wood v. Appal, supra, at page 223, recognized the rule laid down in Wharton v. Garvin, 34 Pa. 340, and uses this language: ''The north and south lines found upon the ground did not reach the river by forty perches on the north and nineteen perches on the south. The diagram exhibited no protraction to the river, and the closing line was represented as a straight line of 238 perches long, leaving a large vacancy between it and the river ...... The representation of an object at a distance from a closing line without any words indicative of an intent to make it a boundary would hardly be sufficient to constitute it such.''

In Salmon Creek Lumber & Mining v. Dusenberry, 110 Pa. 446, 453, Mr. Justice GORDON said: ''Now we of course agree that the effect of the call may be rebutted by such facts and circumstances as tend to show that the surveyor did not intend to limit his survey by its calls, or what otherwise might be taken as calls, as in Henry v. Henry, 5 Barr 249, where it is held that lines and marks found upon the ground will rebut the presumption of an intention on part of the artist to adopt the line of an adjoiner; so in Kelly v. Graham, 9 Watts 116, and Wharton v. Garvin, 34 Pa. 340, where the surveyor indicated his intention by leaving a vacant space between his closing line and the calls marked on the margin of his draft. In such cases the design becomes obvious from the unambiguous act of the artist.''

Noting the fact that the land in dispute is separated from the red quadrilateral and that it is not separated by any line from the main mill property which is described as the property of McClelland and Robinson, this is equivalent to a call: Salmon Creek Lumber Co. v. Dusenberry, supra. There is then a striking parallel to the case of Cryer v. Sawkill Camp, supra. The line there being considered was described as "thence by same (that is, by other lands of Wallace) and along the east bank of Sawkill pond as follows, north 12 degrees east 72 perches ...... north 17½ degrees east 16 perches to the place of beginning." It was held that the property conveyed by the deed ended at "the line along the east bank of Sawkill pond and does not extend to the center of the pond."

(3) The cases in which the call for a stream has been held to prevail over the courses and distances are based on two principles. Where the particulars of a description do not agree that which is liable to error and mistake must give way to that which is certain. Natural objects such as lakes, rivers and creeks are certain and prevail over those placed by the hand of man. Again, the shore line, in the absence of special circumstances, is of little value apart from the ownership of the adjoining land: Jones v. Janney, 8 W. & S. 436, 443. Here a different situation is disclosed. Taking the deed and plot together the south line is placed not at the low-water mark, but at the bank; consequently the call is for the bank. The bank of a stream as we have seen can be recognized and identified just as definitely as low-water mark. The grantors, McClelland and Robinson, owned the bed of the stream "two-thirds of the way across the creek" when the conveyance was made. They were maintaining a mill with a dam extending into the stream and in the operation of the dam would necessarily cause the waters to rise and fall depending on the amount of work per-

formed and the rain fall. The deed to the grantors, McClelland and Robinson, under which both claimed, provided that the premises stood charged with two-thirds of the cost and "expense of keeping in repair the dam on the premises—other lands on the south adjoining being charged with other one-third," and for the payment of a like proportion of the rental paid an upper land owner for backing water from the dam on his premises. When we take into account the fact that the stream was not navigable in fact, that the Commonwealth had granted to the owners the title to the bed of the stream, there is a situation which presents a conclusive reason for assuming that the grantors did retain the shore line, as they had a right to do, with the bed of the stream, rather than grant it to the railroad company. The usual situation is reversed and any inference that it was intended to extend the grant to low-water mark is rebutted. The ordinary reasons for extending the grant do not exist.

In Palmer v. Farrell, 129 Pa. 162, the question involved was title to mud flats on the west side of the Schuylkill River opposite Point Breeze and between high and low tide. The line on the water side was described by courses and distances between points, which points were referred to as "a point on the bank of said River Schuylkill." Justice CLARK, in the opinion, starts with the general statement: "When the bank of a navigable stream is called for as a boundary,—that and no more,—the law will presume the grantor's intention to have been to carry the line to low-water mark; and when the words of a grant are clear and consistent, when they contain no ambiguity, and no fraud or mistake is alleged, the intention of the parties cannot be shown, to override their obvious meaning; but, if there is anything in the words of the grant which would indicate a probably different intent, the question, in the absence of mistake or fraud, is one for

construction of the court; or, if there be extraneous facts or surrounding circumstances alleged which would, if established, bear upon the proper construction, the question may, under proper instructions, become one for the injury.'' The bank in question was not a river or creek bank, but an artificial dike. Consequently, there was involved extrinsic evidence, which it was the duty of the jury to pass upon. The Supreme Court directed a new trial in order that this and other extrinsic evidence might be produced and certain disputed questions of fact submitted to the jury. The court, however, made these significant observations: ''It is clear that the flats are not embraced within the words of the description, as written in this deed. The lands are 'bounded and described according to the survey made thereof by James Miller on the 26th day of April, A. D. 1864,'—only a few days before the execution of this deed. The lines of that survey are the lines given in the deed, and admittedly exclude the lands in dispute. It is plain, then, that it is only by a legal construction of the deed, based upon an assumed intention of the grantors, that the flat lands can be embraced in it; and, as the court is thus called upon to construe the deed, that work must be conducted according to established rules. The words of the grant are wholly consistent with the contention of the plaintiffs in error, that the flat lands were not embraced, and it is only by a legal construction that they may be otherwise understood. The description does not call for the river; it calls for a line run between certain points, designated by the surveyor as on the bank of the river.'' In the Palmer case the land in dispute was land which was covered or bared each day as the tide changed and is in marked contrast with a case where a shore line between the bank and low-water mark is dry a greater portion of the year only being covered in times of high water. In one case the stream

was navigable in fact, and in the other was not. Also see Smoulter v. Boyd, 209 Pa. 146; Fuller v. Cole, 33 Pa. Superior Ct. 563. Here the conveyance indicated a clear intent to stop at the line along the bank.

Considering the conclusive effect of the situation disclosed by the plot we hold that the defendant's line is the line "along the bank" of the Mahoning River and does not extend to low-water mark. We follow Wood v. Appal, supra: "But if the stream is not made the boundary, or if a line is actually run and marked for the survey apart from the stream, the rule changes to suit the facts of the case."

The trial judge gave binding instructions for the plaintiff for the land in dispute and submitted to the jury the question of mesne profits, and the jury rendered a verdict for plaintiff for the land and awarded damages. Subsequently, judgment was entered for the defendant n. o. v. This we think was error.

The judgment of the lower court is reversed and it is directed that judgment be entered for the plaintiff for the land described in the writ and for the money verdict for mesne profits.