## Brady Overseers v. Clinton Overseers, Appellants.

*Estate—Interest in land—Construction of agreement.*

By an agreement under seal it was stipulated that in consideration of an assignment by a married woman of her interest in her father's estate, the grantor agreed to let the said married woman and her husband "live on and occupy the lot upon which they now live, rent free, during the term of their life," they paying taxes, "and at the death of the said Elizabeth Shaffer and Jefferson, her husband, the above to revert back" to grantor or his heirs, with all the improvements thereon. It was shown that the husband was present when the writing was made and assented to it, and that he took possession of the lot with his wife and assisted her in the payment of the taxes.

*Held,* That taking all the circumstances into consideration, this constituted a lease for the lives of the grantee and her husband and the survivor of them, and was hence a freehold estate in lands.

*Pauper—Settlement—Act of June* 13, 1836—*Duty of overseers.*

Where a pauper legally chargeable in one township is residing in another under an order of the court, if the overseers of the former township, in violation of their statutory duty, neglect or wrongfully refuse aid and support to the pauper, so that he is forced to support himself by begging for a period exceeding one year, the pauper will not thereby gain a settlement, though seised of a freehold inheritance in the second township.

Argued March 14, 1892.   Appeal, No. 11, Jan. T., 1892, by defendants, from decree of Q. S. Lycoming Co., March Sess. 1891, No. 23, affirming order of removal.   Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

Appeal from order of removal of a pauper.

The facts appear by the opinion of the court below, IKELER, P. J., of the Twenty-sixth judicial district specially presiding, which was, in part, as follows:

"Appeal by the township of Clinton from an order of removal issued by two justices at the instance of the overseers of the poor of Brady township at the request of Jefferson Shaffer, a pauper, by an order of relief, adjudging him a pauper, and his settlement in Clinton township, and authorizing and empowering the said overseers of Brady township to remove him to Clinton township, all in the county of Lycoming, and state of Pennsylvania.

" The principal question in the case is whether the pauper,

Jefferson Shaffer, a married man living with his wife (no children), has gained a settlement in Brady township according to the 2d, 3d or 4th mode described in the act of assembly of June 13, 1836. Either ' By being charged with and paying his proportion of any public taxes or levies for two years successively. By bona fide taking a lease of any real estate of the yearly value of ten dollars and dwelling upon the same for one whole year and paying the said rent, or by becoming seised of any freehold estate within such district, and dwelling upon the same for one whole year.'

" It is an admitted fact, as the records No. 25, October sessions, 1885, in evidence show, that Jefferson Shaffer was a pauper and a charge on Clinton township, and from that township received aid from April 10, 1883, until July 25, 1885. An order for his relief issued April 10, 1883, while he was living with his wife in Brady township, in the same house on the same lot in which he now lives, and ever since that time has lived.

" During the time above mentioned the relief was promptly furnished by the overseers of Brady township without any order of removal having been granted until July 25, 1885, when they refused him further aid, and an order of removal issued removing Shaffer to the said township of Clinton, from which order of removal the latter township appealed to the quarter sessions of Lycoming county, as of No. 25, October sessions, 1885. The said appeal being finally determined by an opinion filed in the case by his Honor Judge CUMMIN, November 27, 1885, affirming the order of removal. In that appeal Clinton township claimed that inasmuch as the pauper had lived in Brady township one whole year prior to the issuing of any order of removal he had acquired a settlement therein in the same manner and under the same mode as now above claimed. By virtue of the affirmance of that appeal Jefferson Shaffer was declared a pauper chargeable to Clinton township, and his settlement was fixed as of the time when he became so chargeable, to wit : April 10, 1883. Clinton township having, without the order of removal, recognized her liability to support the pauper, and having so rendered him aid until July, 1885, as admitted, we need only, in determining this case, consider whether or not he has acquired a new settlement be-

tween that date and April 26, 1888, the time of issuing the present order of relief. August 7, 1884, Elizabeth Shaffer, wife of Jefferson Shaffer, having purchased about two acres of land in Brady township in 1883 from Henry Decker for the sum of five hundred and fifty dollars, and failing to pay the full consideration money, surrendered her purchase of the same in fee and entered into the contract in writing, a copy of which is in evidence as 'Exhibit B.' And now under and by virtue of the said contract, and their residence on said lot, and payment of taxes by herself and husband, the different modes of acquiring a new settlement by her husband are set up as above stated. It is somewhat difficult to exactly determine what estate the husband and pauper, Jefferson Shaffer, has by virtue of the agreement or writing entered into between Elizabeth Shaffer, his wife, and Henry Decker. Is it a mere license or privilege to occupy without any greater interest, or is it a grant in the land? The contracting party, on the one side, signing the instrument as such, and paying the consideration money of two hundred and fifty dollars, her own separate estate and money, and agreeing to pay the taxes, is Elizabeth Shaffer. The words 'grant, bargain, sell, alien, release and convey' are wanting. It is not made to the grantee, executors, administrators or assigns. It is not in the ordinary words of a deed or lease. If it is a grant in the land it will carry with it the right to assign and an interest capable of being assigned. And such an interest and estate in the land as may be subject to seizure and sale by execution for the debts of the grantees. Is it a lease for the life of the husband as well as for the life of the wife, and hence a freehold estate? The language used is 'to live on and occupy,' 'to let Elizabeth Shaffer and her husband, Jefferson Shaffer, live on,' 'and occupy the lot on which they now live rent free during the term of their life.' Jefferson Shaffer is not named in the premises nor conclusion of the writing. His name only appears in the habendum. The evidence, however, is that he was present when the writing was made and assented to it. He took possession of the lot with his wife, and aided and assisted her in the payment of the taxes. The words 'to live on,' 'occupy' and 'occupancy' mean possession, cultivation, to hold and keep for substantial and practical use. And the word 'revert' implies that the grantor has parted with an estate in

lands. Taking into consideration all the language used in the writing, together with the testimony of the grantor, in which he says ' I first sold the property mentioned to Mrs. Shaffer in fee for five hundred and fifty dollars. Afterwards when she could not pay the amount, I gave her and her husband a life estate in the land. By the second agreement, of August 7, 1884, which was made possibly in the neighborhood of a year after the first, the life estate of Mr. and Mrs. Shaffer, in the agreement of August 7, 1884, was granted in consideration of two hundred and fifty dollars which Mrs. Shaffer had received as an inheritance from her father's estate.' All taken together imply a leasing for the life of Elizabeth Shaffer, and also during the life of Jefferson Shaffer, and is a lease for their lives, and hence rises to the dignity of a freehold estate in lands. While the grantor may not be able to enforce performance of the unperformed condition in the same, nevertheless, so long as it be performed by either or both of the grantees the estate vested in them, or either of them, cannot be divested by the grantor. He is lawfully bound to all its provisions. By it then the pauper has a freehold estate seized in his own right. He can hold it as long as he lives and pays the taxes. The estate is situated in Brady township, where he has continued to reside upon it, with his wife, since 1885. But since that time and the 26th day of April, 1888, the date of issuing the present order of relief, subsequently followed by the order of removal and appeal, has he acquired a new settlement in the said Brady township?

" As to the first- mentioned mode we hold that he did not, because the evidence clearly satisfies us that he was neither charged with, nor did he pay his proportion of public taxes for two years successively. Neither did he take a lease, bona fide, under the statute, nor pay the rent according to the second above mentioned mode of gaining a settlement. Where the husband does not make the lease, nor obligate himself in any manner to pay rent, a payment by the wife on a lease signed by herself as lessee is not a lease or payment of rent by the husband sufficient to confer a settlement upon him by the statue. A husband does not deliver a settlement by or from the acts of the wife as the wife does from the husband. Whether or not he acquired a new settlement by the third

aforementioned mode we regard as the most serious question. Has he dwelt upon his freehold estate in Brady township one whole year in such a manner as will gain him a settlement there? This depends upon the fact whether he was a pauper during that time charged to Clinton township, and received or should have received aid from said township between July 27, 1885, and April 26, 1888, and is a question of fact to be determined by the court upon a careful consideration of all the evidence in the case. If Shaffer was a lawful charge on Clinton township, and by trick or artifice the overseers of the poor of said township insincerely, collusively or wrongfully withheld aid, when it should have been furnished, it should be held the same as having rendered aid and assistance to the pauper as a charge upon the township during the interval and prevent the pauper from gaining a settlement so long as this relation existed. If the overseers of Clinton township, in violation of their statutory duty, in a sinister manner neglected or wrongfully refused aid and support to their charge, so that he suffered therefor or was forced to support himself by stringent and unreasonable means, as a beggar or starving, and did not for one whole year reasonably and voluntarily support himself, he did not gain a settlement by the third mode mentioned.

" Poor authorities might, and too often do, corruptly furnish aid in advance to paupers in order to afford them an opportunity to acquire settlement in a district other than the one to which they belong, and by such sly procedure entrap honest, faithful, confiding officials in allowing a pauper or poor person to effect a change of settlement unjustly. Much of the troublesome and expensive litigation in pauper cases in our own county has occurred in this manner. Worthless lots of land purchased or donated, mere cabins or shanties erected on them, leases made, rent paid, taxes assessed and paid and residence established, all by shrewd, deceitful management to effectuate a change of a poor person's settlement. It is the duty of the courts to nip in the bud all such undue exercise of power and manipulation by overseers of the poor. In what light does this case appear, fairly viewed by the evidence?"

After discussing the evidence, which showed that the pauper was at no time able to work and support himself, and that the Clinton overseers had wrongfully refused him assistance, he continued as follows:

" Had the stopping of aid to the pauper by the authorities of Clinton township been mutual or not demanded or needed by the pauper, or had he received other help, means or property, or voluntarily changed his residence or employment, or his physical condition improved, the overseers of Clinton township might have been justified in refusing further relief. But while he must have been in more need than ever and receiving aid from some neighbors on the asking, begging from many and every time he met them, which was every day or two, getting his friends to draw up and circulate a subscription for his relief, and an order from two justices, as required by law, joining in and obtaining by petition to the court attachment process against the overseers of the poor of Clinton township to compel them to obey the order of relief and removal of 1883–1885, causing the arrest of the overseers of the poor of both Brady and Clinton townships on a criminal charge and warrant for their neglect and refusal to furnish him aid ;—all go to show that he was all the while in absolute need of aid and relief, and doing the very best he knew to obtain it. This is found to be true, as a matter of fact, and convinces us that the overseers of the poor of Clinton township were not authorized or justified in refusing Jefferson Shaffer, the pauper, further aid, nor in striking his name off the poor books. . . .

" Hence, as we find the fact, aid was furnished him for about two years after the order of removal of July 24, 1885, and the present order of relief bearing date of April 26, 1888—less than one year elapsing between the furnishing of aid and the order of relief under which he received aid again from Clinton township, he did not gain a settlement in Brady township by dwelling on his freehold one whole year. Besides we have already held that under the circumstances if aid was not furnished to the pauper by the overseers of Clinton township, it ought to have been and was lawful and necessary and their bounden duty to have furnished it, and, therefore, he did not acquire a new settlement in Brady township according to the mode required by the fourth paragraph in the act of assembly of 1836.

" The facts clearly show that the pauper was a recognized and established charge upon Clinton township, one which they could not nor did not rid themselves of between April 10, 1885, and April 26, 1888,—the latter date being of the order of relief upon which the present order of removal and appeal was taken."

The overseers of Clinton township appealed.

*Errors assigned* were to the finding that the pauper had failed to gain a settlement in Brady township, and to the affirmance of the order of removal.

*J. F. Strieby*, for appellants.

*Henry W. Watson*, *G. B. M. Metzger* with him, for appellees.

PER CURIAM, March 28, 1892:

An examination of the twenty-three specifications fails to disclose any serious error. We do not think their discussion would add anything to the value or interest of our legal literature.

Judgment affirmed.