# Fuller *v.* Cole, Appellant.

*Evidence—Will—Title to land—"Wild lands"—Pedigree.*

Where in an action involving title to real estate, a will describing lands devised as "wild lands" is offered subject to further proof as to the identification of the land in controversy with the land devised by the will, and this proof is supplied, no error can be assigned to the admission of the will in evidence.

In such a case great-nieces of the testator who had personal knowledge of the lands through association, correspondence with members of the family, and undisputed family records, are competent witnesses as to pedigree.

*Deed—Boundary—Lake—Prescription—Cutting ice—Riparian owner.*

Where a deed calls for a corner in the edge of a small lake, and thence along the edge of the lake, the grantee has no ground to claim title to the middle of the lake.

In an action to recover damages for cutting ice on a small lake, where the plaintiff shows record title in the bed of the lake, and possession as much as could be maintained under the circumstances, the defendant cannot set up a right by prescription to cut the ice, where it appears that although ice was cut at irregular intervals, plaintiff objected as soon as a right to cut was asserted, and that the defendant had in the year prior to the suit requested permission from the plaintiff to cut ice, and had paid for the privilege.

Argued March 1, 1907.    Appeal, No. 40, Jan. T., 1907, by defendant, from judgment of C. P. Lackawanna Co., March T., 1905, No. 351, on verdict for plaintiff in case of Helen M. Fuller v. Uriah Cole.    Before RICE, P. J., PORTER, HENDERSON, ORLADY, HEAD and BEAVER, JJ.    Affirmed.

Trespass to recover damages for cutting ice on a lake. Before EDWARDS, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for six cents.    Defendant appealed.

*Errors assigned* were (2, 3) rulings on evidence as stated in the opinion of the Superior Court; (1, 4–6), instructions as follows :

564 FULLER *v.* COLE, Appellant.

Assignment of Errors—Opinion of the Court. [33 Pa. Superior Ct.

[1. The plaintiff has established her title to about nine-tenths of Lily Lake, and the trespass committed by the defendant was committed on the part of the lake belonging to the plaintiff.] [1] Whether there is a small undivided part outstanding is immaterial; it does not defeat the plaintiff's right to bring her action.

[2. Under the undisputed testimony on both sides the plaintiff had sufficient possession, considering the character of the property, to maintain an action of trespass.] [4]

3. The defendant's land is described by metes and bounds, two of the courses reading as follows : " Thence south forty-four degrees west seventy-nine perches and five-tentl s of a perch to a corner in the edge of Wall pond; (Wall pond being Lily Lake) thence along the edge of said pond south fifty-seven degrees east thirty-one perches to a corner in the edge of said pond." [This line extending thirty-one perches along the edge of the pond does not give the defendant the right to the center of the lake or to any part of the lake beyond his survey line.] [5]

[4. All the evidence in the case as to the use made of the lake by the defendant and by the other shore-owners, seven or eight in number, defeat any right on the part of any of them to claim a prescriptive privilege to cut ice upon the lake or to fish or to boat upon the waters of the lake within the lines of the plaintiff's property.] [6]

*A. Ricketts,* with him *Fred. C. Hanyen,* for appellant.

*E. N. Willard,* of *Willard, Warren & Knapp,* with him *Welles & Torrey,* for appellee.

Opinion by Orlady J., May 13, 1907 :

An action of trespass was brought before a magistrate for cutting ice on a body of water known as Lily Lake, situated in Lackawanna county. The defendant filed his affidavit alleging that the title to the land would come in question, and the case was removed to the court of common pleas. At the conclusion of the trial counsel for both parties asked for binding instructions, and after hearing argument the court instructed the jury to return a verdict in favor of the plaintiff and to

assess damages at a nominal sum. A verdict for six cents was rendered.

While the second assignment of error might properly be disregarded as being in direct violation of rule XVI of this court, under the special circumstances of the case we treat it as a valid one. Thomas W. Clymer was the undisputed owner of an undivided nine-tenths of the land claimed by the plaintiffs, and by his will he devised to his brother, William Bingham Clymer, all his "wild lands." When this will was offered in evidence it was received "subject to further proof as to identification of the land in question with the land devised by the will." This proof was supplied through the definite location of, and title to, the original warrants, with undisputed evidence that this lake was within their lines, coupled with a chain of title which at the time of trial vested in plaintiff. This was so clearly established that the appellant relied on another and entirely different proposition, as is shown by the opening inquiry of this argument: "The controlling question in this case is, has the plaintiff shown possession of the land in question in the case?"

The third assignment of error is as clearly in violation of the same rule of this court. To prove that William Bingham Clymer died intestate, and that the plaintiff's grantors were his sole legal heirs, the depositions of Mrs. Mercur and Mrs. Little were taken. Counsel for the defendant was present at the taking of depositions and the witnesses were fully cross-examined as to their relationship and means of knowledge of the facts to which they testified. William Bingham Clymer was their great-uncle, and they had personal knowledge through years of association as children, which was continued through correspondence with all the members of his family and undisputed family records. William Bingham Clymer was married in 1852 and died in 1873. In 1878, Mrs. Clymer with two of her children were drowned through the sinking of the Steamship Pomerania in the British Channel, and two of the children, Mary and Rose, alone survived that disaster. They have continuously remained abroad, and have avowed their intention of never returning to the United States. They are now married, one residing in France and the other in Italy, with their respective families, and are the sole surviving heirs of William Bing-

ham Clymer. The relationship between the witnesses and the plaintiff's grantors was sufficiently established, in the judgment of the court, to receive their depositions in evidence and permit their declarations to go to the jury: Sitler v. Gehr, 105 Pa. 577; Gehr v. Fisher, 143 Pa. 311. The proof thus adduced met fully all the requirements of the law in regard to their lineage and descent. An examination of the depositions, as printed in full in the appendix in appellant's paper-book, fully sustains the action of the court in this respect. The second and third assignments of error are overruled.

The action was brought for the purpose of testing the plaintiff's title to this inland body of water called Lily Lake or Wall Pond, containing eighty-four acres, more or less. The plaintiff by voluminous and somewhat complicated assurances clearly established her paper title to the satisfaction of the court to an undivided nine-tenths of the land, in part covered by the water of Lily Lake or Wall Pond. In addition to this it was clearly shown that it was wild, unimproved and unseated land, that taxes had been paid upon it by the present plaintiff and her predecessors in title, that notices of protest against trespassers had been maintained, and that the location was definitely ascertained by a surveyor, who determined the original location of the Moses Starr and Samuel Giffen warrants of which these eighty-four acres of land are a part: Wilkinson v. Connell, 158 Pa. 126; Irwin v. Patchen, 164 Pa. 51. Another element of controversy in the case, and about which the appellant makes an earnest contention, is the effect to be given to the deed by which the defendant holds title to his land adjoining the lake. The description in his deed, so far as it relates to that part of the land of which he claims to be a shore owner, is as follows: " Thence south 44 degrees west 79 perches and $\frac{5}{10}$ of a perch to a corner in the edge of Wall Pond; thence along the edge of said pond 57 degrees east 31 perches to a corner in the edge of said pond; thence south 18 perches to a hemlock tree, . . . . containing 50 acres, strict measure, be the same more or less, being part of a larger tract under the warrantee name of Moses Starr." By the testimony of George Stevenson, a surveyor, it was proven that in a conversation he had with the defendant, the location of the above quoted lines was not disputed, viz.: "I said to him, 'You know that I ran

your lines here where the division of the Franklin estate was made between you and Mr. White, and you were entirely satisfied with the work, were you not?' Yes, he was; 'And you knew where your lines ran on that occasion, and they didn't give you any title to the lake?' No, he said; he never claimed any title to the lake." It was shown as a further fact that the year preceding this trespass, the defendant directed a request to the superintendent of the plaintiff as follows: "Dear Sir: I desire to cut ice on Lily Lake, now owned by Mr. E. L. Fuller, and am willing to pay for the same at a rate not exceeding ten cents per ton," which request was granted, and the ice taken from the lake during that season, and paid for by him.

There is no merit in his contention as urged by his counsel on the trial below, and in this court, that his conveyance carried his title to the center of the pond. In the description of his grant there is nothing doubtfully set down, and it comprehends to a certainty the thing granted by express and unmistakable words. There is not any conflict between natural objects and monuments on the ground on the one hand, and courses, distances and quantity on the other. The description in the deed is clearly, certainly and definitely applied to the ground, and there is no controversy as to the exact location of any course mentioned in his deed. For all purposes of title, and of rights flowing therefrom, it was perfectly immaterial to the defendant what was south and west of his land as defined by the lines "from a corner in the edge of Wall Pond; thence along the edge of said pond south 57 degrees east 31 perches to a corner in the edge of said pond; thence south 18 perches to a hemlock tree." Had this boundary line been a stone wall six feet in width at the bottom, the grant would have extended to the center of it, as was said in Warner v. Southworth, 6 Conn. Reports, 471, but it could go no further than the center of the boundary line. The line as described, not the pond, was his boundary, and beyond it he had no right to go, whether to take ice, mine coal, or cut timber, or whether it was arable land, or a lake. In crossing this line he became a trespasser. Even in cases where a river is mentioned as a boundary, where the language used clearly shows such to be the intention of the grantor, the bank, side, margin or shore become themselves

monuments, and are to be treated as such, and such grant does not extend to the center of the stream unless there are in the deed other words indicating that such were the grantor's intention : Angell on Water Courses, sec. 26, and cases cited. In City of Boston v. Richardson, 95 Mass. 146, the rule is stated to be as follows : " Whenever land is described as bounded by other land, or by a building, or structure, the name of which according to its legal and ordinary meaning includes the title in the land of which it has been a part, as a house, a mill, a wharf, or the like, the side of the land or structure referred to as a boundary is the limit of the grant, but when the boundary line is simply by an object, whether natural or artificial, the name of which is used in ordinary speech as defining a boundary, and not as describing a title in fee, and which does not in its description or nature include the earth as far down as the grantor owns, and yet it has width as in the case of a lake, a river, a ditch, a wall, a fence, a tree, or a stake and stones, then the center of the thing so running over or standing on the land is the boundary of the lot granted. And in Child v. Starr, 4 Hill's Reports (N. Y.), 369, the rule is held to be, if the grantor after giving the line to the river bounds his land by the bank of the river, or describes the line as running along the bank of the river, or bounds it upon the margin of the river, he shows that he does not consider the whole alveus of the stream a mere mathematical line so as to carry his grant to the middle of the river. In Canal Appraisers v. The People, 17 Wendell, 570, Chancellor Walworth says: " There cannot be a possible doubt that if I am the owner of lands on either or both sides of a stream, whether the same be navigable or otherwise, and am also the owner of the bed of the stream itself, I may convey the land on either side or both in such a manner as to retain or reserve to myself the bed of the river or stream, and the islands therein, if any such there be. In Holden v. Chandler, 61 Vt. 291 (18 Atlantic Repr. 310), it was shown that two deeds in the plaintiff's chain of title indicated that the boundary of his land was the bank of the pond, namely, one bounding the lot " by the edge of the mill pond," and another by " the bank of said mill pond." The court held that the line was fixed and permanent, and his boundaries were not enlarged by the receding of the stream ; that the territory

was limited by a defined boundary, without regard to the continuous subsidence of the waters constituting the pond, thereby leaving the latter dry. Not only the terms of the description, but the nature and reason of the case evinced the intent to fix a defined boundary of land, and give ownership to that boundary, and on both sides of it.

The defendant in this case is not a riparian owner in the sense of owning land bounding upon a water course, which without further words of definition pass title to the thread or central line of the stream. This small body of water is without current or thread, and both the plaintiff's title and the defendant's are fixed by clearly defined lines in regard to the location of which there is no dispute. The authorities in Pennsylvania are in accord with the ones above cited. Smoulter v. Boyd, 209 Pa. 146 would of itself be conclusive against the defendant's contention. He is entitled to all the land inclosed by the metes and bounds of his deed: to this acreage and no more. His contention that the defendant had a right by prescription to take ice from this body of water is not supported by any evidence. It is true that ice had been taken from the pond at irregular intervals, without the direct permission of the owner, by the class of persons called by the appellant, shore owners, but the right to do so was never recognized by the holder of this title, and as soon as it was asserted as a right, it was resisted by the posting of notices and requiring persons to make a formal application, and pay for the ice taken. Possession of the land covered by the water was taken and asserted by the plaintiff and her predecessors in title, so far as possession could be taken of an uninclosed, nonnavigable pond or small lake, and the defendant not having any right to cut ice as a riparian owner, and recognizing that he had no right by prescription, by his making a formal application for permission to take ice the year previous, and paying for the ice so taken, his assertion of title by prescription fell with the balance of his defense.

The assignments of error are not sustained, and the judgment is affirmed at the costs of the appellant.